**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**ANDERSON DIVISION**

SOUTH CAROLINA GAMBLING RECOVERY LLC,

*Plaintiff*,

*v.*

KALSHI INC., KALSHIEX LLC, KALSHI KLEAR INC., KALSHI KLEAR LLC, KALSHI TRADING LLC, SUSQUEHANNA INTERNATIONAL GROUP, LLP, SUSQUEHANNA GOVERNMENT PRODUCTS, LLLP, ROBINHOOD MARKETS, INC., ROBINHOOD DERIVATIVES, LLC, and WEBULL CORPORATION

*Defendants.*

Case No. ___________________

**NOTICE OF REMOVAL**

Defendants Kalshi Inc., KalshiEX LLC, Kalshi Klear Inc., Kalshi Klear LLC, and Kalshi Trading LLC (together, the "Kalshi Defendants"), and with respect to the grounds for removal set forth in Sections IV and V hereto only, Webull Corporation, Susquehanna International Group, LLP, and Susquehanna Government Products, LLLP (collectively, the "Removing Defendants"), hereby remove this action from the Court of Common Pleas, County of Oconee, Tenth Judicial District, to the United States District Court for the District of South Carolina, Anderson Division. This Court has original jurisdiction over this matter under 28 U.S.C. § 1332 because there is complete diversity of citizenship between Plaintiff South Carolina Gambling Recovery LLC and all properly joined Defendants, and the amount in controversy exceeds $75,000, exclusive of

interest and costs. The citizenship of Defendants Webull Corporation, Susquehanna International Group, LLP, and Susquehanna Government Products, LLLP (collectively, the "Sham Defendants") should be disregarded because they are not properly joined in this lawsuit. The Sham Defendants were fraudulently joined and otherwise are parties whose citizenship can be disregarded for purposes of determining the existence of diversity jurisdiction. This Court also has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1332(d), 1441, 1446, and 1453(b).

This Notice of Removal is not intended to constitute and should not be construed as constituting the general appearance or appearance on the merits of the Removing Defendants in this matter. By filing this Notice of Removal, the Removing Defendants do not waive any defenses they have to this action whether in state or federal court, including but not limited to improper service of process, lack of personal or subject matter jurisdiction, and the Removing Defendants' right to compel this action to arbitration.

In support of removal, the Removing Defendants respectfully state as follows:

# I. BACKGROUND

## A. The Removing Defendants

1. KalshiEX LLC ("KalshiEX") is a financial services company that operates a derivatives exchange and prediction market on which users can buy and sell financial products known as "event contracts." Its exchange market is federally regulated as a designated contract market ("DCM") by the Commodity Futures Trading Commission ("CFTC") pursuant to the Commodity Exchange Act of 1936, 7 U.S.C. § 1, *et seq*. ("CEA").

2. Kalshi Klear LLC ("Kalshi Klear") provides clearing services for event contracts traded on the Kalshi DCM platform. It offers clearing and settlement services to market

participants for pre-funded and fully collateralized trades. Kalshi Klear is registered with and federally regulated by the CFTC as a derivatives clearing organization pursuant to the CEA.

3. Kalshi Trading LLC ("Kalshi Trading") participates on and provides liquidity for the contracts traded on the KalshiEX DCM platform. Like other market participants, Kalshi Trading is a member of KalshiEX's exchange, subject to KalshiEX's rules, and contributes to the trading volume and quotations on the KalshiEX DCM platform.

4. Kalshi Inc. is the parent holding company of Kalshi Klear Inc., KalshiEX, and Kalshi Trading.

5. Kalshi Klear Inc. is a wholly owned subsidiary of Kalshi Inc. and the sole member of Kalshi Klear.

6. Defendants Robinhood Markets, Inc. and Robinhood Derivatives, LLC (the "Robinhood Defendants") consent to removal and are anticipated to file their own notice of removal in this action.

7. As set forth below, Defendants Susquehanna International Group, LLP ("SIG") and Susquehanna Government Products, LLLP ("SGP" and together with SIG, the "Susquehanna Defendants") and Defendant Webull Corporation have been fraudulently joined to this action.

8. The Susquehanna Defendants and Defendant Webull Corporation need not join this petition for removal. *See* 28 U.S.C. § 1446(b)(2)(A) ("[A]ll defendants who have been *properly joined and served* must join in or consent to the removal of the action.") (emphasis added).[1] Nonetheless, the Sham Defendants join this removal petition solely with respect to Section IV (Class Action Fairness Act Jurisdiction) and Section V (Federal Question Jurisdiction).

[1] Unless otherwise indicated, all citations have been "cleaned up."

### B. The Sham Defendants

9. Webull Corporation is a group holding company to more than four dozen entities located in the United States, Canada, Europe, and Asia. It is organized under the laws of the Cayman Islands and has its principal place of business in Florida. *See* Webull Corp., Annual Report (Form 20-F), at 48 (Apr. 25, 2025), https://www.sec.gov/ix?doc=/Archives/edgar/data/0001866364/000121390025035656/ea0235698-20f_webull.htm ["2024 Form 20-F"].

10. Webull Corporation is purportedly liable based on its partnership with Kalshi to allegedly "offer a prediction market hub." Complaint ¶ 17, *South Carolina Gambling Recovery LLC v. Kalshi Inc*., No. 2025CP3700563 (S.C.C.P. June 11, 2025) ["Exhibit A"]. The Webull/Kalshi partnership, however, is between KalshiEX and Webull Financial LLC, not Webull Corporation.[2] *E.g.*, Kalshi Help Center, *Markets on Brokers*, https://help.kalshi.com/markets/markets-on-brokers (last visited Oct. 7, 2025) (indicating that KalshiEX is partnered with Webull Financial LLC). The partnership launched in February 2025, less than six months before the Complaint was filed. *See* Webull Financial LLC, *Webull Connects to Kalshi to Offer Investors Innovative, Prediction Markets*, PR Newswire (Feb. 12, 2025), https://www.prnewswire.com/news-releases/webull-connects-to-kalshi-to-offer-investors-innovative-prediction-markets-302373541.html.

11. Plaintiff seeks recovery of money allegedly "won" by the Kalshi Defendants, a portion of which Plaintiff alleges was shared with Webull Corporation. Ex. A ¶ 17. Kalshi is

---

[2] Plaintiff is on notice of this fact, yet it has not corrected its error here, and it continues to serve the fraudulently joined entity in its other copycat litigations. *See* Ohio Action Notice of Removal, at ¶ 10; *e.g.*, Return of Service, *S.C. Gambling Recovery LLC v. Kalshi Inc.*, No. 2025CP3700563 (Oconee Cnty. Cir. Ct., Sept. 10, 2025); Summons Directed to Webull Corp., *Mass. Gambling Recovery LLC v. Kalshi Inc.*, No. 2584CV01630, Dkt. No. 14 (Suffolk Sup. Ct. Sept. 8, 2025); Proof of Service, *Ill. Gambling Recovery LLC v. Kalshi Inc.*, No. 2025L007524 (Cook Cnty. Cir. Ct., Aug. 21, 2025).

alleged to be "the *direct* counterparty to every transaction on the platform (and therefore a 'winner' of gamblers' money)." *Id.* ¶ 48 (emphasis in original). Plaintiff does not allege Webull Corporation "won" any sums other than through Kalshi. *Id.* ¶ 39 (alleging that Webull Corporation is a " 'winner' for all the same reasons and in all the same ways that Kalshi is a 'winner' ").

12. Webull Financial LLC is registered as a futures commission merchant ("FCM") with the CFTC and is a member of the National Futures Association ("NFA").[3] Webull Financial LLC's sole member is and was, as of the filing of the Complaint, Webull Holdings (US) Inc., which is and was, as of the filing of the Complaint, organized under the laws of Delaware and has its principal place of business in New York. *See* 2024 Form 20-F at iv (" '*Webull Financial*' means Webull Financial LLC, a limited liability company incorporated under the laws of the State of Delaware"); *id.* at 91 (identifying corporate structure for Webull Corporation and its subsidiaries); *see also* Webull Financial LLC, NFA, https://www.nfa.futures.org/BasicNet/ (search "Webull Financial LLC" and click first result) (last visited Oct. 7, 2025) (indicating business address). Thus, Webull Financial LLC is and was, at all times relevant, a citizen of Delaware and New York.

13. Susquehanna Government Products, LLLP is a limited liability limited partnership formed under the laws of Delaware. SGP is alleged to "operate[] as an institutional market maker for Kalshi, buying and selling event contracts on the platform." Ex. A ¶ 14. As relevant here, SGP is a citizen of Florida for purposes of diversity jurisdiction.

[3] Webull Financial LLC is also registered with the U.S. Securities and Exchange Commission as a broker-dealer and is a member of the Financial Industry Regulatory Authority ("FINRA"). *See* 2024 Form 20-F at 76 ("Webull Financial is registered as a broker-dealer with the United States Securities and Exchange Commission and is a member in good standing of FINRA, authorized to conduct business as an introducing broker in compliance with the SEC, CFTC, NFA and FINRA rules.").

14. Susquehanna International Group, LLP is a limited liability partnership formed under the laws of Delaware. As relevant here, SIG is a citizen of Florida for purposes of diversity jurisdiction. SIG is a partner of SGP and alleged to be the "parent" company of SGP and all other Susquehanna entities. Ex. A ¶ 13.

15. The Susquehanna Defendants are purportedly liable based on allegations that they "enable prediction markets' illegal unregulated gambling offerings by providing much-needed liquidity," and, in exchange, allegedly receive "various financial and non-financial kickbacks from Kalshi." Ex. A ¶ 3.

16. As discussed further below, Webull Corporation and the Susquehanna Defendants were fraudulently joined. Because there is no colorable claim against Webull Corporation or the Susquehanna Defendants, this Court should disregard the citizenship of these defendants when assessing its subject matter jurisdiction in this case.

**C. The Case**

17. Plaintiff South Carolina Gambling Recovery LLC filed this action in the Court of Common Pleas, County of Oconee, Tenth Judicial Circuit, on June 11, 2025 (the "South Carolina Action"). Ex. A.

18. Between June 11 and 12, 2025, Kentucky Gambling Recovery LLC, Ohio Gambling Recovery LLC, Massachusetts Gambling Recovery LLC, Illinois Gambling Recovery LLC, and Georgia Gambling Recovery LLC also filed copycat litigations—filing complaints virtually identical to the one filed in the South Carolina Action—in state courts in Kentucky, Ohio, Massachusetts, Illinois, and Georgia, respectively.[4]

---

4 *Ky. Gambling Recovery LLC v. Kalshi, Inc.*, 25-CI-00512 (Ky. Cir. Ct. June 11, 2025); *Ohio Gambling Recovery LLC v. Kalshi, Inc.*, 2025-CV-01517 (Mahoning Cnty. C.P. Ct. June 11,

19. The Kalshi Defendants and, with respect to certain grounds for removal, Webull Corporation, removed the Ohio action to the Northern District of Ohio, Eastern Division on July 28, 2025.[5] *See* Notice of Removal, *Ohio Gambling Recovery LLC v. Kalshi Inc.*, 25-cv-01574-BYP, Dkt. No. 1 (N.D. Ohio July 28, 2025) ["Ohio Action Notice of Removal"]. Likewise, the Kalshi Defendants and, with respect to certain grounds for removal, the Susquehanna Defendants and Webull Corporation, removed the Illinois, Massachusetts, and Georgia actions, respectively, to the Northern District of Illinois, Eastern Division, on September 19, 2025, the District of Massachusetts on September 22, 2025, and the Middle District of Georgia, Columbus Division, on October 2, 2025. *See* Notice of Removal, *Ill. Gambling Recovery, LLC v. Kalshi Inc. et al.*, 25-cv-11394 (LAH), Dkt. No. 1 (E.D. Ill. Sept. 19, 2025); Notice of Removal, *Mass. Gambling Recovery LLC v. Kalshi Inc. et al.*, 25-cv-12707 (RGS), Dkt. No. 1 (D. Mass. Sept. 22, 2025); Notice of Removal, *Ga. Gambling Recovery LLC v. Kalshi Inc. et al.*, 25-cv-00310 (CDL), Dkt. No. 1 (M.D. Ga. Oct. 2, 2025).

20. The plaintiffs in the six copycat state litigations are all represented by the same counsel.[6] *See* Ex. A at 26. The "Authorized Person" for each of the plaintiff LLCs, including South Carolina Gambling Recovery LLC, is Maximillian Amster, the Chief Executive Officer of

---

2025); *Ill. Gambling Recovery LLC v. Kalshi Inc*., No. 2025L007524 (Ill. Cir. Ct. June 11, 2025); *Mass. Gambling Recovery LLC v. Kalshi, Inc.*, 2584CV01630 (Mass. Super. Ct. June 11, 2025); *Ga. Gambling Recovery LLC v. Kalshi, Inc.*, SC2025CV001749 (Ga. Muscogee Cnty. St. Ct. June 12, 2025).

5 The Susquehanna Defendants consented to removal with respect to certain grounds. Ohio Action Notice of Removal, at ¶ 8.

6 *See supra* note 4.

Veridis Management LLC, a litigation finance firm.[7] *See* Decl. of Maximillian Amster ¶ 2, *Bogart v. Thanasides*, No. 1:24-cv-04770, Dkt. No 68-1 (N.D. Ill. Apr. 14, 2025) ["Amster Decl."].

21. Each of the copycat complaints, including the Complaint in this matter, purport to state claims under each state's respective "Statute of Anne." *See, e.g.*, Ex. A ¶¶ 5, 6, 18, 22. The plaintiffs claim that these centuries-old laws, modeled after an eponymous 1710 British law, authorize them to sue to recover "gambling losses" allegedly incurred by other unnamed individuals (*i.e.*, not the plaintiff LLC) from a "winning party." *See, e.g.*, Ex. A ¶¶ 5, 6; S.C. Code Ann. § 32-1-20.

22. As relevant here, South Carolina's Statute of Anne authorizes a person who "by playing at cards, dice table or any other game whatsoever or by betting on the sides or hands of such as do play at any of the games aforesaid, lose to any person or persons so playing or betting, in the whole, the sum or value of fifty dollars and shall pay or deliver such sum or value or any part thereof shall be at liberty, within three months then next ensuing, to sue for and recover the money or goods so lost and paid or delivered or any part thereof from the respective winner or winners thereof . . . ." S.C. Code Ann. § 32-1-10. However, if the loser does not pursue a claim within three months, a third party "without covin or collusion" can "sue for and recover the same and treble the value thereof, with costs of suit, against such winner or winners." *Id.* § 32-1-20.

---

[7] Georgia Gambling Recovery LLC, Certificate of Formation (Mar. 18, 2025); Illinois Gambling Recovery, LLC, Certificate of Formation (Mar. 18, 2025); Kentucky Gambling Recovery LLC, Certificate of Formation (Mar. 18, 2025); Massachusetts Gambling Recovery LLC, Certificate of Formation (Mar. 18, 2025); Ohio Gambling Recovery LLC, Certificate of Formation (Mar. 18, 2025); South Carolina Gambling Recovery LLC, Certificate of Formation (Mar. 18, 2025). The Certificates of Formation for each of the six LLCs are available through the website, State of Delaware, Dept. of State: Div. of Corps., https://icis.corp.delaware.gov/ecorp/entitysearch/namesearch.aspx (last visited Oct. 7, 2025).

Importantly, those provisions "apply only to those gambling activities not authorized by law." *Id.* § 32-1-60.

23. The Complaint purports to sue the Defendants under South Carolina's Statute of Anne for hosting and trading in ***federally regulated*** and ***lawful*** event contracts. As noted above, the event contracts at issue were traded on an exchange market that is federally regulated as a DCM by the CFTC. As in each of the copycat litigations, the Complaint in the South Carolina Action claims that federally regulated event contracts are "illegal, unregulated wagers on future events" and that the Defendants are "gambling 'winners' for purposes of the State's Statute of Anne." Ex. A ¶ 28.

24. The Complaint alleges that Kalshi (without distinguishing among Kalshi entities) is a "winner" because it functions as "the *direct* counterparty to every transaction" challenged here, and that it is "Kalshi that will ultimately pay *the winners*" in a transaction. Ex. A ¶¶ 35, 48 (first emphasis in original); *see also id.* ¶ 28 (Kalshi's "prediction markets serve as counterparties to each wager").

25. Plaintiff alleges that Kalshi "wins" by taking a "transaction fee" on each transaction. Ex. A ¶¶ 35, 37. The other Defendants are all alleged to "win" by either "sharing" in or receiving downstream financial benefits *from Kalshi's* alleged "winnings." *See* Ex. A ¶¶ 3, 38-39 (alleging that the Sham Defendants "receive various financial and non-financial kickbacks from Kalshi"); ¶ 49 ("market makers are not financially independent of Kalshi" and "receive all sorts of financial and non-financial kickbacks"); ¶¶ 38-39 (the Robinhood Defendants and Webull Corporation "share[ ] in Kalshi's 'transaction fee' "). Plaintiff does not purport to sue, nor does it identify, "the winners" that it alleges Kalshi "will ultimately pay" after the event that is the subject of the contract has taken place. Ex. A ¶ 35.

26. Based on its allegation that "Defendants are individually and collectively the 'winners' of gambling competitions played by the State's residents" and that "Plaintiff may sue for the uncollected losses," Plaintiff purports to bring this suit to recover the "millions of dollars" lost by "thousands of individuals within South Carolina." Ex. A ¶¶ 6, 30, 67. Plaintiff has not identified any specific individual who lost money. *See generally* Ex. A.

## II. THIS COURT HAS SUBJECT MATTER JURISDICTION UNDER 28 U.S.C. § 1332

27. This Court has subject matter jurisdiction over this case under 28 U.S.C. § 1332 because there is complete diversity of citizenship between Plaintiff and the Removing Defendants,[8] and the amount in controversy exceeds $75,000 exclusive of interest and costs. *See Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 87 (2014) ("Section 1446(a) requires only that the grounds for removal be stated in 'a short and plain statement'—terms borrowed from the pleading requirement set forth in Federal Rule of Civil Procedure 8(a)."); *see also Ellenburg v. Spartan Motors Chassis, Inc.*, 519 F.3d 192, 199 (4th Cir. 2008) (same).

### A. There is Complete Diversity of Citizenship Among the Plaintiff and Removing Defendants

28. For purposes of diversity jurisdiction under 28 U.S.C. § 1332, a limited liability company has the citizenship of each of its members. *Cent. W. Virginia Energy Co. v. Mountain State Carbon, LLC*, 636 F.3d 101, 103 (4th Cir. 2011). Similarly, to identify the citizenship of a limited partnership, the court must look to the citizenship of each of its partners. *Brown Goldstein Levy LLP v. Fed. Ins. Co.*, 68 F.4th 169, 173 n.2 (4th Cir. 2023). A corporation is a citizen of its state of incorporation as well as the state in which it maintains its principal place of business. 28 U.S.C. § 1332(c)(1). An individual is a citizen of the state in which he has established a physical

[8] For purposes of this Section II, the Susquehanna Defendants and Webull Corporation are not Removing Defendants.

presence and intends to remain. *Miss. Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 48 (1989).

**1. *Plaintiff is a Citizen of Florida***

29. Plaintiff South Carolina Gambling Recovery LLC is a limited liability company formed under the laws of Delaware. Its mailing address is 1700 S MacDill Ave, Suite 300, Tampa, FL 33629. Ex. A ¶ 7. As confirmed by Plaintiff's counsel, Plaintiff's sole member is a natural person domiciled in Florida. *See also* Amster Decl. ¶ 8. Upon information and belief, the composition of the Plaintiff's membership and the citizenship of its sole member have not changed since the filing of the Complaint.

30. As a result, South Carolina Gambling Recovery LLC is and was, at all relevant times, a citizen of Florida.

**2. *Defendants (Other than the Sham Defendants) are Not Citizens of Florida***

31. Kalshi Inc. is and was, as of the filing of the Complaint, a Delaware corporation with its principal place of business in New York, NY. Ex. A ¶ 8. Therefore, Kalshi Inc. is a citizen of Delaware and New York.

32. KalshiEX LLC is and was, as of the filing of the Complaint, a limited liability company formed under the laws of Delaware. Ex. A ¶ 9. KalshiEX's sole member is and was, as of the filing of the Complaint, Kalshi Inc. Therefore, KalshiEX is a citizen of Delaware and New York.

33. Kalshi Klear Inc. is and was, as of the filing of the Complaint, a Delaware corporation with its principal place of business in New York, NY. Ex. A ¶ 10. Therefore, Kalshi Klear Inc. is a citizen of Delaware and New York.

34. Kalshi Klear LLC is and was, as of the filing of the Complaint, a limited liability company formed under the laws of Delaware. Ex. A ¶ 11. The sole member of Kalshi Klear is and was, as of the filing of the Complaint, Kalshi Klear Inc., which is a citizen of Delaware and New York. *Supra* ¶ 33. Therefore, Kalshi Klear is a citizen of Delaware and New York.

35. Kalshi Trading LLC is and was, as of the filing of the Complaint, a limited liability company formed under the laws of Delaware. Ex. A ¶ 12. Kalshi Trading's sole member is and was, as of the filing of the Complaint, Kalshi Inc. Therefore, Kalshi Trading is a citizen of Delaware and New York.

36. Robinhood Markets, Inc. is and was, as of the filing of the Complaint, a Delaware corporation with its principal place of business in Menlo Park, CA. Ex. A ¶ 15. Therefore, Robinhood Markets, Inc. is a citizen of Delaware and California.

37. Robinhood Derivatives, LLC is and was, as of the filing of the Complaint, a limited liability company formed under the laws of Delaware. Ex. A ¶ 16. The sole member of Robinhood Derivatives, LLC is and was, as of the filing of the Complaint, Robinhood Markets, Inc. Therefore, Robinhood Derivatives, LLC is a citizen of Delaware and California.

38. As a result, for purposes of diversity jurisdiction, there is and was, as of the filing of the Complaint, complete diversity because none of the Defendants (who are not Sham Defendants) are or were citizens of Florida, Plaintiff's state of citizenship. The table below summarizes the state or states of citizenship of each of the parties except the Sham Defendants.

| Party | State(s) of Citizenship |
|---|---|
| South Carolina Gambling Recovery LLC | Florida |
| Kalshi Inc. | Delaware, New York |
| KalshiEX LLC | Delaware, New York |
| Kalshi Klear Inc. | Delaware, New York |
| Kalshi Klear LLC | Delaware, New York |
| Kalshi Trading LLC | Delaware, New York |
| Robinhood Markets, Inc. | Delaware, California |
| Robinhood Derivatives, LLC | Delaware, California |

### B. The Amount in Controversy Exceeds $75,000

39. The Complaint seeks to recover "for four times the amount of each [South Carolina] gambler's unrecovered losses" and estimates those "losses" at "millions of dollars." Ex. A ¶ 6; *see id.*, Prayer for Relief. Thus, the amount in controversy exceeds $75,000, exclusive of interest and costs.

## III. THE SHAM DEFENDANTS ARE FRAUDULENTLY JOINED AND SHOULD BE IGNORED FOR PURPOSES OF REMOVAL

40. The Complaint names three defendants that are citizens of Florida for purposes of diversity jurisdiction: Webull Corporation, SIG, and SGP. *See supra* ¶¶ 9, 13, 14. As set forth below, the Sham Defendants were fraudulently joined and should be disregarded when determining diversity jurisdiction. *Mayes v. Rapoport*, 198 F.3d 457, 461 (4th Cir. 1999) ("This [fraudulent joinder] doctrine effectively permits a district court to disregard, for jurisdictional purposes, the citizenship of certain nondiverse defendants, assume jurisdiction over a case, dismiss the nondiverse defendants, and thereby retain jurisdiction.").

41. A non-diverse defendant has been fraudulently joined where a plaintiff has no colorable basis for recovery against that defendant. *See Marshall v. Manville Sales Corp.*, 6 F.3d 229, 233 (4th Cir. 1993) (fraudulent joinder where "there is no possibility" of "establish[ing] a cause of action"); *Poulos v. Naas Foods, Inc.*, 959 F.2d 69, 73 (7th Cir. 1992) (fraudulent joinder where plaintiff had "no chance of recovering damages" against parent corporation); *Jernigan v.*

*Ashland Oil Inc.*, 989 F.2d 812, 813-15, 817 (5th Cir. 1993) (fraudulent joinder where plaintiff identified the wrong entity as his employer, joined a non-diverse party that did "not exist as a separate entity but merely as an unincorporated operating division" of another defendant, and was unable, as a matter of law, to state a claim against the non-diverse defendant), *cert. denied*, 510 U.S. 868, 870 (1993).

42. Plaintiff's claims against the Sham Defendants are not colorable because the Complaint fails to allege legally sufficient facts to hold any of these non-diverse parties liable. Further, both Webull Corporation and SIG are incorrectly identified "parent" or "holding" entities that are not the entities engaged in the trading activity described in the Complaint and cannot be proper defendants under applicable state law.

**A. Plaintiff Lacks a Colorable Claim Against Webull Corporation**

43. ***Webull is an incorrectly joined holding company***—Webull Corporation is fraudulently joined because the activities ascribed to it in the Complaint—namely, its partnership with Kalshi related to the trading of event contracts—were not carried out by Webull Corporation.[9] The Webull entity that partners with KalshiEX, which is the alleged basis of liability, is Webull

---

[9] Other than through association with KalshiEX, Plaintiff does not allege that any Webull entity offers the alleged "gaming-like" event contracts that are the focus of the Complaint—nor could it. At no time, on or before the filing of this Complaint, did any Webull entity offer any Kalshi contracts that involved sports events, political elections or music. *See* Ex. A ¶¶ 2, 27 (describing event contracts on outcomes of sporting events, election results, and song popularity). In fact, the only event contracts offered by Webull Financial LLC concern traditional commodities as the underlying basis for the derivative (*e.g.*, the price of Bitcoin, interest rates). *See* Wayback Archive, Kalshi Help Center, *Markets on Brokers* (listing event contracts offered through partnership with Webull Financial LLC as of June 20, 2025), https://web.archive.org/web/20250620203255/https://help.kalshi.com/markets/markets-on-brokers; *see also* Webull Financial LLC: Website, *Webull x Kalshi* (identifying event contracts available through Webull Financial to include those based on crypto prices and interest rates), https://www.webull.com/trading-investing/prediction-markets?hl=en (last visited Oct. 7, 2025).

Financial LLC (Webull's FCM and registered broker-dealer in the United States).[10] *See supra* ¶ 12.

44. Webull Corporation's public filings are replete with information explaining that it is a holding company and its trading services are exclusively offered in the United States through Webull Financial LLC. *See, e.g.*, 2024 Form 20-F at 90 (explaining Webull Corporation was incorporated "as our group holding company"); *id.* at 78-79 (describing business of subsidiary Webull Financial LLC); *id.* at 6 (stating that futures products are offered through Webull Financial LLC); *see also* Webull Financial LLC, NFA, https://www.nfa.futures.org/basicnet/ (search "Webull Financial LLC" and click first result) (last visited Sept. 19, 2025) (indicating Webull Financial LLC is Webull's CFTC-registered FCM).[11] In fact, Webull Corporation was formed as a global holding company two years *after* Webull Financial LLC launched its U.S. operations. *See* 2024 Form 20-F at 89-90 ("[W]e began offering brokerage services in the United States in May 2018 through Webull Financial LLC [after incorporating in May 2017] . . . . In September 2019,

---

[10] Plaintiff alleges that Webull Corporation is liable by virtue of its alleged partnership with KalshiEX to provide "a prediction market hub." Ex. A ¶ 17. As the Complaint acknowledges, that partnership was launched in February 2025, only four months before the Complaint was filed. *See* Ex. A ¶ 39. Even assuming, *arguendo*, that a Webull entity could be held liable as a result of its partnership with KalshiEX, Plaintiff's claims are limited to one month of alleged conduct, *i.e.*, those claims ripening between May 14, 2025 (three months from the Kalshi-Webull partnership) and June 11, 2025 (filing of the complaint). *See* S.C. Code Ann. §§ 32-1-10, 32-1-20. The Complaint also alleges that the Robinhood Defendants partnered with KalshiEX in May 2025 and, therefore, no cause of action has accrued against the Robinhood Defendants under South Carolina Statute of Anne. Ex. A ¶ 38.

[11] Removing Defendants may meet their burden of showing fraudulent joinder by presenting evidence outside the allegations in the Complaint. *See Mayes*, 198 F.3d at 464 ("In determining whether an attempted joinder is fraudulent, the court is not bound by the allegations of the pleadings, but may instead consider the entire record, and determine the basis of joinder by any means available.").

we incorporated Webull Corporation under the laws of the Cayman Islands as our group holding company.”).[12]

**B. Plaintiff Lacks a Colorable Claim Against the Susquehanna Defendants**

45. ***Plaintiff has no colorable claim that the Susquehanna Defendants are "winners"***—SGP and SIG are fraudulently joined because there is no colorable claim that either is a "winner" for purposes of South Carolina's Statute of Anne. *See Humphrey v. Viacom, Inc.*, No. 06–2768 (DMC), 2007 WL 1797648, at *10 (D.N.J. June 20, 2007) ("The statutes [of Anne] make clear that the 'winner' must be a participant in the card, dice or other game at issue."). Plaintiff's theory of liability against all defendants as "winners" is dubious—considering the alleged "wagers" at issue here are event contract transactions made on a federally regulated board of trade (where the party who transacts on "Yes" or "No" with respect to a future event profits when the event does or does not occur) and Plaintiff is not even suing the party who correctly predicted the event, but rather the board of trade itself and its business partners. But Plaintiff's theory as to how the Susquehanna Defendants are liable as "winners" is uniquely far afield, making their inclusion as Defendants here so patently defective that South Carolina Gambling Recovery LLC has failed to "establish a cause of action" against the Susquehanna Defendants. *Marshall*, 6 F.3d at 233.

---

[12] Alternatively, to the extent any claim arising out of the alleged Kalshi-Webull partnership could be considered colorable, the real party in interest to such a claim would be Webull Financial LLC, a citizen of Delaware and New York at all times relevant to this removal and the entity that offered the trading services in partnership with Kalshi, (*see supra* ¶ 43 & n.9), not Webull Corporation. Accordingly, only the citizenship of Webull Financial LLC, which is diverse from Plaintiff, should be considered with respect to any potentially colorable claims based on the Kalshi-Webull partnership. *See Navarro Sav. Ass'n v. Lee*, 446 U.S. 458, 460-61 (1980) ("[A] federal court must disregard nominal or formal parties and rest jurisdiction only upon the citizenship of real parties to the controversy.").

46. Indeed, Plaintiff does not allege that the Susquehanna Defendants are "winners" as a result of any direct transacting in "Yes" or "No" positions on a particular event contract.[13] Nor does Plaintiff allege even that the Susquehanna Defendants profited on any particular transaction, let alone one with a South Carolina resident. *Cf.* Ex. A ¶¶ 35, 38-39 (alleging other defendants profited by charging a transaction fee on trades or by sharing in that fee). Rather, Plaintiff alleges that the Susquehanna Defendants, as alleged institutional "market makers," profit by receiving "***various financial and non-financial kickbacks from Kalshi***" as a result of their "contract" with Kalshi. Ex. A ¶¶ 3, 50 (emphasis added).

47. Nowhere in the Complaint does Plaintiff identify or quantify these alleged "kickbacks," describe how or whether they relate to a particular trade, or allege that the "kickbacks" are tied with, contingent on, or otherwise related in any way to the amount that anyone allegedly "won" in a transaction. Ex. A ¶¶ 3, 50. There is no colorable allegation supporting the inference that the Susquehanna Defendants received even *a single dollar* of Kalshi's alleged "winnings" from *any South Carolina resident*. As the Complaint is pleaded, the purported financial "kickbacks" allegedly received by the Susquehanna Defendants could have come from transactions with non-South Carolina residents or, of course, from any other source of funds available to Kalshi, without regard to any particular "wager" or "game" under the South Carolina Statute of Anne.

48. In this sense, Plaintiff's allegation that the Susquehanna Defendants are "winners" for purposes of the Statute of Anne is no different than claiming that a third-party vendor or

[13] This is the case for all Defendants. In fact, Plaintiff alleges, in contradictory fashion, that Defendant Kalshi is both a "winner" *and* the entity that "will ultimately pay *the winners*," Ex. A ¶ 34 (emphasis added), and that other Defendants are "winners" as a result of various business arrangements with Kalshi, *see generally* Ex. A.

employee of Kalshi is a "winner" because their salaries or services were paid for out of funds that may (or may not) have been funded by a "wager" or "game" involving a South Carolina resident. And, of course, it goes without saying that "non-financial kickbacks" are not monetary "winnings" from South Carolina residents.

49. Because Plaintiff has not alleged that the way the Susquehanna Defendants allegedly profited relates in any way to any transaction between market participants in South Carolina, the Susquehanna Defendants are fraudulently joined.

**C. Plaintiff Lacks a Colorable Claim Against SIG for an Additional Reason**

50. ***SIG is an incorrectly joined "parent"* company**—SIG was fraudulently joined for the additional reason that it is an incorrectly joined "parent" entity. SIG is alleged to be "the parent company of all Susquehanna entities," including defendant SGP, which is alleged to be "an institutional market maker for Kalshi, buying and selling event contracts on the platform." Ex. A ¶ 13-14. SIG is not alleged to have done anything in the Complaint, other than act as a parent company, for "all Susquehanna entities." *See generally* Ex. A. All allegations in the Complaint involving "Susquehanna," which is pleaded as a group without differentiation among entities, refer to institutional market making activity, which the Complaint alleges is conducted by SGP. Ex. A ¶¶ 50, 52, 56. Publicly available information confirms that the institutional market maker associated with Kalshi is SGP, not SIG. *See, e.g.*, KalshiEX LLC, *Kalshi Onboards Its First Dedicated Institutional Market Maker*, BusinessWire (Apr. 3, 2024), https://www.businesswire.com/news/home/20240403664852/en/Kalshi-Onboards-Its-First-Dedicated-Institutional-Market-Maker (Kalshi "announced today their first dedicated institutional market marker in the ecosystem, Susquehanna Government Products, LLLP").

51. For this additional reason, SIG is fraudulently joined.

* * *

52. For all the reasons stated above, Plaintiff has failed to "establish a cause of action" against Webull Corporation, SIG, and SGP—each of these defendants were fraudulently joined. *Marshall*, 6 F.3d at 233. For purposes of diversity jurisdiction, their Florida citizenship should be disregarded, and they should be dismissed as defendants. *See Mayes*, 198 F.3d at 46 (fraudulent joinder doctrine permits dismissal of non-diverse defendants). None of the Removing Defendants is a citizen of Florida; therefore, this Court has jurisdiction over the Action under 28 U.S.C. § 1332.

## IV. REMOVAL IS ALSO PROPER UNDER THE CLASS ACTION FAIRNESS ACT

53. The Court has an independent basis for jurisdiction other than through diversity of citizenship because it also has original jurisdiction under the Class Action Fairness Act ("CAFA"). 28 U.S.C. § 1332(d), 1453(b).

54. An action may be removed pursuant to CAFA if: (a) it is a civil action filed "under Rule 23 of the Federal Rules of Civil Procedure or similar state statute or rule of judicial procedure"; (b) any member of the putative class is a citizen of a different state from any defendant; (c) the amount in controversy exceeds $5,000,000, exclusive of interest and cost; and (d) the number of members in the putative class, in the aggregate, is no less than 100. 28 U.S.C. § 1332(d)(1)(B), (d)(2), (d)(5).

55. A mass action shall "be deemed to be a class action" removable under CAFA. 28 U.S.C. § 1332(d)(11)(A). A mass action is "any civil action" in which "monetary relief claims of 100 or more persons are proposed to be tried jointly on the ground that the plaintiffs' claims involve common questions of law or fact." *Id.* § 1332(d)(11)(B)(i). Like a class action, a mass action is removable under CAFA if it meets the requirements (b)-(d) set forth in ¶ 54 above.

56. For the reasons set forth below, the Complaint qualifies under CAFA as a class action, or alternatively, a mass action.

**A. The Lawsuit is a Purported Class Action Under CAFA**

57. "CAFA's purpose and objective [is] broad federal jurisdiction with narrowly construed exceptions." *Dominion Energy, Inc. v. City of Warren Police & Fire Ret. Sys.*, 928 F.3d 325, 337 (4th Cir. 2019); *see also* S. Rep. No. 109-14, at 43 (2005), 2005 U.S.C.C.A.N. 3, 41 ("Overall, [CAFA] is intended to expand substantially federal court jurisdiction over class actions. Its provisions should be read broadly, with a strong preference that interstate class actions should be heard in a federal court if properly removed by any defendant.").

58. Congress enacted CAFA in order to "make[ ] it harder for plaintiffs' counsel to 'game the system' " and to end the practice of filing "copycat class actions in various state courts around the country, clogging judges' dockets and forcing judges to duplicate each other's work." S. Rep. No. 109-14, at 5, 60. CAFA reflects a Congressional determination that it is federal—not state—courts that are best equipped to handle such copycat class actions. *Id.* at 60 ("Unlike state courts, federal courts can take advantage of multi-district consolidation procedures that enable one judge to consolidate dozens of class actions and resolve them far more efficiently. This is yet another way in which The Class Action Fairness Act will speed up justice—not slow it down."). For this reason, CAFA "places the determination of more interstate class action lawsuits in the proper forum—the federal courts." *Id.* at 5.

59. Consistent with this intent, Congress directed that "the definition of 'class action' is to be interpreted liberally." *Id.* at 35. As such, CAFA's "application should not be confined solely to lawsuits that are labeled 'class actions' by the named plaintiff." *Id.* Instead, "lawsuits

that *resemble* a purported class action should be considered class actions" for purposes of CAFA. *Id.* (emphasis added).

60. Although the plaintiffs across the six state litigations (*see supra* ¶¶ 17-17) have opted against explicitly *labeling* their suits class actions, it is clear that the six state litigations—including the one removed here—*resemble* class actions. A "'similar' statute or rule need not contain all of the [ ] conditions and administrative aspects of Rule 23" but, it must, "at a minimum," provide a procedure by which a suit can be brought on behalf of others. *W. Virginia ex rel. McGraw v. CVS Pharmacy, Inc.*, 646 F.3d 169, 175 (4th Cir. 2011); *see also Nessel ex rel. Michigan v. AmeriGas Partners, L.P.*, 954 F.3d 831, 838-39 (6th Cir. 2020) (Nalbandian, *C.J.*, concurring in part) (quoting 28 U.S.C. § 1332(d)(1)(B)) ("State statutes or rules of judicial procedure are 'similar' to Rule 23 when they 'authorize an action to be brought by 1 or more representative persons as a class action.' ").

61. Plaintiff claims that South Carolina's Statute of Anne authorizes an action to be brought by a representative on behalf of every individual who has allegedly suffered a loss. S.C. Code Ann. § 32-1-20 (if the individual who loses does not bring a suit within three months, "and without covin or collusion," any person can "sue for and recover the same and treble the value thereof"); *Humphrey*, 2007 WL 1797648, at *6 (dismissing claim brought under S.C. Code Ann. § 32-1-20 because the complaint did not "identify even one individual who participated in even one of the [defendants' games], much less one who allegedly lost money to Defendants in those [games], and concedes that [plaintiff] has done neither himself").

62. Here, Plaintiff purports to bring suit to recover the alleged ongoing losses of a class: the "thousands of individuals within South Carolina [who] have lost . . . more than $50 . . . by sitting or playing at games of chance (*i.e.*, gambling using Defendants, and have not sued to recover

those losses within three months of payment to Defendants." Ex. A ¶ 67. A single individual bringing suit based on the interests of a larger group is the "essence" of a class action. *CVS Pharmacy*, 646 F.3d at 179 (Gilman, *C.J.*, dissenting). Furthermore, because a third-party plaintiff like South Carolina Gambling Recovery LLC may not bring suit until after the three-month period during which the alleged "loser" may exclusively seek recovery, South Carolina's Statute of Anne creates a procedure and imposes constraints "similar" to Rule 23 within the meaning of CAFA. *Cf. CVS Pharmacy*, 646 F.3d at 175 (statutes similar to Rule 23 for purposes of CAFA must create a "procedure" by which "it would not be unfair to bind all class members to the judgment entered for or against the representative party"). This meets the "minimum" requirements for similarity to Rule 23 under CAFA. *CVS Pharmacy*, 646 F.3d at 175.

63. Tellingly, contemporary Statute of Anne suits have by and large been pleaded as putative class actions. *See, e.g.*, *Kennedy v. VGW Holdings Ltd.*, No. 1:24-CV-2184-TWT, 2025 WL 1932750, at *1 (N.D. Ga. July 14, 2025) (granting motion to dismiss in putative class action under Georgia's Statute of Anne); *Soto v. Sky Union, LLC*, 159 F. Supp. 3d 871, 874 (N.D. Ill. 2016) (dismissing putative class action under Illinois's, California's, and Michigan's anti-gambling laws); *Fahrner v. Tiltware LLC*, No. 13-0227-DRH, 2015 WL 1379347, at *1 (S.D. Ill. Mar. 24, 2015) (dismissing putative class action purporting to bring claims on behalf of "hundreds of thousands—possibly millions of Illinois poker players"), *aff'd sub nom. Sonnenberg v. Amaya Grp. Holdings (IOM) Ltd.*, 810 F.3d 509 (7th Cir. 2016). These cases plead claims in one suit under multiple states' Statutes of Anne (or similar anti-gambling laws), with the plaintiffs in each state constituting a sub-class. *See, e.g.*, Notice of Removal, Ex. 1, Dkt. No. 1-1, *Soto v. Sky Union, LLC*, 15 Cv. 04768 (N.D. Ill. May 29, 2015).

64. The South Carolina Action will undoubtedly pose administrative difficulties that make the litigation appropriate for removal under CAFA. Plaintiff's allegations depend on common, dispositive questions of federal law (*e.g.*, whether a federally regulated and licensed "event contract" can be considered a "wager" and whether the CFTC-regulated Defendants can be considered "winners" within the meaning of the Statute of Anne) and are purportedly asserted based on the claims of thousands of South Carolina residents that Plaintiff does not (and cannot) individually identify. Absent use of a class-action-like mechanism, six state courts will have to adjudicate the merits of each challenged transaction individually. This will "clog[ ] judges' dockets and forc[e] judges to duplicate each other's work." S. Rep. No. 109-14, at 60. As Congress has recognized, federal courts can resolve such cases "far more efficiently." *Id.* This case presents the very type of aggregate controversy Congress intended federal courts to oversee under CAFA's expansive grant of jurisdiction.

**B. Alternatively, the Lawsuit is a "Mass Action" Under CAFA**

65. In the alternative, the action is removable as a mass action under CAFA. 28 U.S.C. § 1332(d)(11)(B)(i) (a mass action is "any civil action" in which "monetary relief claims of 100 or more persons are proposed to be tried jointly on the ground that the plaintiffs' claims involve common questions of law or fact"); Ex. A ¶ Demand for Jury Trial. The Complaint purports to bring claims in a single civil action recovering the losses of "*thousands* of individuals" (or, alternatively, in the capacity as a statutory assignee of each such individual), meaning Plaintiff asks to stand in the shoes of "thousands" of separate persons. Ex. A ¶ 67 (emphasis added); *see also Fair Gaming Advocs. MA LLC v. VGW Holdings Ltd.*, No. 2384-CV-02451, 2024 WL 5279408, at *2 (Mass. Super. Dec. 12, 2024) (finding that a corporate entity suing an online casino under the similar Massachusetts Statute of Anne is "stand[ing] in the shoes of [gamblers]" and

"not on behalf of" them). The five copycat complaints filed in other states purport to do the same; together, the litigations claim to seek damages on behalf of thousands of alleged losers across six states. As discussed below, the merits of the claims for each alleged South Carolina "loser," and to a significant extent the merits in all six actions, will turn on common questions of law and fact, *see infra* ¶¶ 68-74, and should be tried jointly. *See, e.g.*, *Bullard v. Burlington N. Santa Fe Ry. Co.*, 535 F.3d 759, 762 (7th Cir. 2008) ("It does not matter whether a trial covering 100 or more plaintiffs actually ensues; the statutory question is whether one has been proposed. This complaint, which describes circumstances common to all plaintiffs, proposes one proceeding and thus one trial.").

**C. CAFA's Minimal Diversity, Amount-in-Controversy, and Numerosity Requirements are Met**

66. Minimal diversity exists under CAFA if "any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. § 1332(d)(2)(A). Minimal diversity is met because at least one of the alleged losers will be a citizen of South Carolina, *see* Ex. A ¶ 66, and no Removing Defendant (nor even the Sham Defendants) is a citizen of South Carolina. *See supra* ¶¶ 9, 13, 14, 31-38.

67. CAFA's amount in controversy requirement is also satisfied here. *See* Ex. A ¶ 6 (alleging that Defendants "take millions of dollars" and seeking treble damages); 28 U.S.C. § 1332(d)(2) ("the matter in controversy [must] exceed[ ] the sum or value of $5,000,000, exclusive of interest and costs").

68. CAFA's numerosity requirement is met because Plaintiff purports to sue on behalf of—or alternatively be treated as a statutory assignee for the claims of—thousands of individuals.[14] Ex. A ¶ 67.

## V. THE COURT HAS FEDERAL QUESTION JURISDICTION

69. This Court also has federal question jurisdiction over the South Carolina Action because Plaintiff's claims necessarily depend on the resolution of a substantial question of federal law. 28 U.S.C. § 1331.

70. An action arises under federal law if the complaint establishes "that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." *Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 690 (2006). The question of federal law must be: "(1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn v. Minton*, 568 U.S. 251, 258 (2013).

### A. Whether Federally Regulated Swap Transactions Constitute Illegal, Unregulated Gambling is a Substantial Question of Federal Law

71. ***Federal law is necessarily raised***— South Carolina's Statute of Anne authorizes a person to recover for losses incurred "gambling." S.C. Code Ann. § 32-1-10. However, that provision "appl[ies] only to those gambling activities *not authorized by law*." *Id.* § 32-1-60 (emphasis added); *see also Proctor v. Whitlark & Whitlark, Inc.*, 778 S.E.2d 888, 893 (S.C. 2015) (explaining that § 32-1-60 was enacted to limit application of the state's Statute of Anne "to losses

[14] Although Plaintiff has yet to identify the thousands of individuals on whose behalf it purports to sue, under South Carolina law it will have to do so. *Humphrey*, 2007 WL 1797648, at *6. Thus, for purposes of a mass action, the "100 or more persons whose claims must be proposed for a joint trial" would be "actual, named parties." *Mississippi ex rel. Hood v. AU Optronics Corp.*, 571 U.S. 161, 176 (2014).

sustained by illegal gambling"). Plaintiff's claims therefore necessarily turn on the federal issue of whether event contracts are unlawful "gambling activities" that are "not authorized by [federal law]" within the scope of the Statute of Anne or are swap transactions regulated exclusively by the CFTC and thereby expressly authorized by federal law. Plaintiff acknowledges as much when it alleges that the event contracts at issue are "illegal, unregulated gambling," while also pleading that this "litigation centers on 'prediction markets,' which allow for the purchase and sale of 'event contracts' " and that "[e]vent contracts are defined federally." Ex. A ¶¶ 31, 32. The Complaint cites directly to the provisions of the CEA that are applicable to *registered entities* with respect to the CFTC's approval of event contracts. Ex. A ¶ 31 (citing 7 U.S.C. § 7a-2(c)(5)(C)(i)). Moreover, Plaintiff must establish the existence of an illegal contract, which raises the federal question of whether federal law authorizes the event contracts at issue here. And Plaintiff must prove an illegal contract *in South Carolina*, which raises the federal question of where the transactions on a federally regulated DCM actually occur. *See* S.C. Code Ann. § 32-1-20 (permitting third party recovery for personal use and "to the use of the county in which the offense shall have been committed").

72. ***Federal law is disputed***—Defendants dispute that they can be liable because the event contracts at issue were traded on an exchange market that is federally regulated as a DCM by the CFTC. On the merits, whether or not trading event contracts is unlawful gambling or federally regulated swap transactions is "the central point of dispute." *Gunn*, 568 U.S. at 259.

73. ***The federal question is substantial***—The question raised under federal law is substantial, as Plaintiff's right to recovery under South Carolina Statute of Anne depends on whether the event contracts are federally authorized and regulated swaps under the CEA, which would necessarily mean trading them cannot be "gambling" regulated under state law. *See Gunn*,

568 U.S. at 261 (explaining that a question is substantial where, for example, it calls into question the validity of a federal statute).

74. ***Capable of resolution without disrupting the federal-state balance***—This Court is best-positioned to resolve the issue of whether the event contracts are federally regulated swap transactions, and are, therefore, subject to exclusive federal regulation. *See Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Curran*, 456 U.S. 353, 355-56, 386 n.81 (1982) (the CFTC has "exclusive jurisdiction over commodity futures trading"); *In re Int. Rate Swaps Antitrust Litig.*, 261 F. Supp. 3d 430, 445 (S.D.N.Y. 2017) (explaining that the CEA was amended in 2010 to "establish a comprehensive new regulatory framework for swaps" and the CFTC was "vested . . . with exclusive jurisdiction to implement that framework"). Because the event contracts at issue are swaps and are subject to exclusive federal regulation, they cannot be regulated under state gambling laws. *See* 7 U.S.C. §§ 2(a)(1)(A), 1a(47)(A)(ii) (defining "swap" to include event contracts, stating, "the term 'swap' means any agreement, contract or transaction . . . that provides for any purchase, sale, payment, or delivery . . . that is dependent on the occurrence, nonoccurrence, or the extent of the occurrence of an event . . . associated with a potential financial, economic, or commercial consequence"); *see also KalshiEX LLC v. Flaherty*, No. 25-CV-02152-ESK-MJS, 2025 WL 1218313, at *6 (D.N.J. Apr. 28, 2025) (rejecting argument that KalshiEX's event contracts do not meet the requirement of a "potential financial, commercial, or economic consequence" to warrant the CFTC's exclusive regulation). Such a resolution by this Court, therefore, will not disrupt the federal-state balance but will instead reinforce the harmonious application of federal and state laws, consistent with the Supremacy Clause. U.S. Const. art. VI, cl. 2.

### B. Plaintiff's Claims also Implicate the Wire Act

75. The Complaint also requires the interpretation, construction, and effect of the Wire Act, 18 U.S.C. § 1084(a). Plaintiff alleges that Defendants "run afoul of the Wire Act." Ex. A ¶¶ 56, 57. Plaintiff argues that, because the Defendants allegedly violated the Wire Act, the event contracts must be unlawful "gambling" within the meaning of South Carolina's Statute of Anne. Plaintiff's claim thus requires a court to determine whether the federally regulated event contracts violate the Wire Act. This presents a substantial and disputed federal question that this Court can resolve without disturbing the balance between federal and state judicial authorities.

## VI. DEFENDANTS MEET THE OTHER PROCEDURAL REQUIREMENTS FOR REMOVAL

76. The Removing Defendants were each served with and actually received copies of the Complaint and Summons between September 8 and 9, 2025. This Notice of Removal is being filed within 30 days of their receipt of the Complaint and less than one year after commencement of the action; thus, removal is timely filed under 28 U.S.C. § 1446(b) and (c).

77. Venue is proper in this Court pursuant to 28 U.S.C. §§ 121, 1441(a), and 1446(a) because the United States District Court for the District of South Carolina, Anderson Division, is the federal judicial district court and division embracing the County of Oconee, South Carolina, where the Complaint was originally filed.

78. The Removing Defendants all join in and consent to removal of this action. The Robinhood Defendants also consent to removal and are anticipated to file their own notice of removal in this action. The consent of the Sham Defendants is not required because they have been fraudulently joined. *Jernigan*, 989 F.2d. at 815 (holding that the removing defendant was not required to obtain consent for removal from the allegedly improperly joined defendant).

79. In the event that the Court finds that Webull Corporation, SGP, and SIG were not fraudulently joined, they join the Removing Defendants in the CAFA and federal question jurisdiction bases for removal.

80. No previous application has been made for the relief requested in this Notice.

81. Consistent with 28 U.S.C. § 1446(d), the Removing Defendants will promptly file a copy of this Notice of Removal with the Court of Common Pleas, County of Oconee, Tenth Judicial Circuit, and will serve a copy of the same upon the other parties in this action. A copy of the docket in the underlying state court action is attached hereto as Exhibit B.

* * *

WHEREFORE, the Removing Defendants remove this action, now pending in the Court of Common Pleas, County of Oconee, Tenth Judicial Circuit to the United States District Court for the District of South Carolina, Anderson Division, consistent with 28 U.S.C. §§ 1331, 1332, 1441, 1446, and 1453(b) and respectfully request that the Court of Common Pleas, County of Oconee, Tenth Judicial Circuit proceed no further with respect to the removed action. If any question arises as to the propriety of the removal of this action, the Removing Defendants respectfully request the opportunity to present a brief and oral argument in support of their position that this case is removable.

October 7, 2025

/s/ Beattie B. Ashmore

**BEATTIE B. ASHMORE, P.A.**

Beattie B. Ashmore
Fed. Bar No. 5215
650 E. Washington Street
Greenville, SC 29601
Phone: (864) 467-1001
Fax: (864) 672-1406
beattie@beattieashmore.com

**MILBANK LLP**

Sean Murphy*
Katherine Fell*
Matthew Laroche*
55 Hudson Yards
New York, New York 10001-2163
Phone: (212) 530-5000
smurphy@milbank.com
kfell@milbank.com
mlaroche@milbank.com

Joshua Sterling*
1101 New York Avenue, NW
Washington, D.C. 20005
Phone: (202) 835-7500
jsterling@milbank.com

** Pro hac vice motions forthcoming*

*Counsel for Defendants Kalshi Inc., KalshiEX LLC, Kalshi Klear Inc., Kalshi Klear LLC, Kalshi Trading LLC, Susquehanna International Group, LLP, Susquehanna Government Products, LLLP, and Webull Corporation*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a copy of the foregoing was served upon the following counsel, via electronic mail, this 7th day of October 2025.

Christopher Mills (S.C. Bar No. 101050)
SPERO LAW L.L.C.
557 East Bay St. #22251
Charleston, SC 29413
Tel: (843) 606-0640
cmills@spero.law

Derek T. Ho, Esq.
Kyle B. Grigel, Esq.
Kellogg, Hansen, Todd, Figel & Frederick, P.L.L.C.
1615 M Street, N.W., Suite 400
Washington, D.C. 20036
Tel: (202) 325-7900
dho@kellogghansen.com
kgrigel@kellogghansen.com

*Attorneys for Plaintiff South Carolina Gambling Recovery LLC*

Eugene Scalia, Esq.
Jonathan Bond, Esq.
Nick Harper, Esq.
Gibson, Dunn & Crutcher LLP
1700 M Street, N.W.
Washington, D.C. 20036
escalia@gibsondunn.com
jbond@gibsondunn.com
nharper@gibsondunn.com

*Attorneys for Defendants Robinhood Markets, Inc. and Robinhood Derivatives, LLC*

/s/ Beattie B. Ashmore
Beattie B. Ashmore